UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA HEREDIA,<br><br>         Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>         Defendant. | Case No.  CV 12-4113-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.  INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when he: 1) found that she was not credible; 2) rejected her treating doctors' opinions; and 3) determined her residual functional capacity.  For the reasons discussed below, the Court concludes that the ALJ did not err.

## II.  SUMMARY OF PROCEEDINGS

In July 2008, Plaintiff applied for DIB and SSI, alleging that she was disabled due to pain in her joints and muscles, diabetes, high cholesterol, anxiety, and depression.  (Administrative Record ("AR")

119-25, 139-46, 173.)  According to Plaintiff, she was so incapacitated as a result of her ailments that she could not even walk.  (AR 146.)  Her applications were denied initially and on reconsideration. She then requested and was granted a hearing before an ALJ.  On September 28, 2010, she appeared with counsel and testified at the hearing.  (AR 25-39.)  The ALJ denied the applications in November 2010.  (AR 14-21.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-5.)  This action followed.

## III. ANALYSIS

### A. The Credibility Finding

The ALJ determined that Plaintiff was not credible.  Plaintiff contends that the ALJ erred in doing so.  For the following reasons, the Court concludes that the ALJ did not err.

The ALJ thoroughly explained why he found Plaintiff's testimony incredible.  (AR 17-20.)  This explanation included the fact that: Plaintiff's claim that she was almost totally incapacitated as a result of pain was not supported by the medical record; Plaintiff's treatment was conservative, consisting of mild pain relief medicine; the consulting examiner found no evidence to support Plaintiff's claimed disabling condition; and Plaintiff's work history suggested a lack of motivation.  (AR 17-20.)  While the Court might question the last basis, the others were clearly supported by the record and are sufficient reasons for questioning Plaintiff's testimony.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding lack of objective medical evidence to support claims is a factor ALJ can consider in evaluating claimant's testimony); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding inconsistency between allegations of severe pain and conservative treatment was proper basis

for discounting credibility). As explained in detail below, the record does not support the extreme limitations claimed by Plaintiff and the ALJ's questioning of her credibility as a result was not in error. As such, the ALJ's credibility finding will not be disturbed.

B.   <u>The ALJ's Findings Regarding the Medical Providers</u>

Plaintiff's treating doctors, Dr. Moore, Dr. Khurana, and Dr. Doan, determined that Plaintiff was disabled and would not be able to complete a normal workday or workweek on a regular and continuing basis. The ALJ rejected these opinions on the ground that they were not supported by the medical record, including the doctors' notes or any objective tests. For the reasons explained below, the Court affirms this finding.

Dr. Moore summarily concluded in a one-sentence "disability certificate" that Plaintiff was "totally incapacitated" due to coronary artery disease, high cholesterol, high blood pressure, arthritis, carpal tunnel syndrome, and temporomandibular joint disorder. (AR 236.) He also submitted a three-page, check-the-box form supporting that claim. (AR 237-39.) Dr. Moore, who lists his specialty as internal medicine, also completed a mental health questionnaire, concluding that Plaintiff was extremely limited--the most severe designation on the form--in *every one* of 16 mental/ emotional categories. (AR 240-41.) Yet, there is not a single treatment record or chart note in the medical record from Dr. Moore, never mind one that supports such extreme limitations. Rather, Dr. Moore's records consist entirely of check-the-box and fill-in-the blank forms--apparently completed solely to further Plaintiff's social security case--and prescription sheets, some of which prescribe medication and others which simply contain notes to the Agency,

informing it that Dr. Moore has concluded that Plaintiff is disabled. (AR 235-52.)

    The ALJ properly disregarded Dr. Moore's unsupported and unsubstantiated conclusions that Plaintiff was disabled cloaked as medical opinions. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (rejecting treating physician's opinion because it was "conclusory and brief and unsupported by clinical findings"); *Magallanes v. Bowen,* 881 F.2d 747, 751-54 (9th Cir. 1989) (upholding ALJ's rejection of treating doctor's opinion that was contradicted by evidence in the record).  Dr. Moore was not charged with and was not asked to determine whether Plaintiff was disabled.  Rather, his task was to describe Plaintiff's ailments and explain how they limited her ability to perform work-related functions so that the ALJ could then determine whether Plaintiff was disabled, as that term is defined in social security law.  Clearly, Dr. Moore overreached here.  And the ALJ's discounting of Dr. Moore's conclusions as a result was not in error.

    The Court reaches the same result with regard to the ALJ's rejection of Dr. Khurana's opinion.  Dr. Khurana, too, concluded that Plaintiff was disabled, though not to the degree Dr. Moore did.  (AR 212-13, 223-24.)  The ALJ rejected Dr. Khurana's opinion because it was not supported by any treatment notes or the overall evidence in the record and it was an opinion as to the ultimate issue of disability, which is reserved to the ALJ.  (AR 19.)  The record supports these justifications for discounting Dr. Khurana's opinion.  There are no treatment notes in this record from Dr. Khurana.  None.  Thus, it is unclear what he based his opinion on.  In addition, there is no medical evidence in the record to support the degree of

disability set forth by Dr. Khurana.  For example, Dr. Khurana focused primarily on Plaintiff's ankle and foot pain in concluding that Plaintiff was unable to work because she could not stand and/or walk for long periods of time.  (AR 213.)  But the podiatrist who examined Plaintiff at the behest of Plaintiff's doctors, including Dr. Khurana, found that, though Plaintiff suffered from severe plantar fasciitis, she was not limited by her ankle and foot pain.  In fact, the podiatrist recommended that Plaintiff "change her exercises to swimming, cycling, water aerobics, pilates, or yoga."  (AR 211.)  Thus, the podiatrist's opinion was clearly inconsistent with Dr. Khurana's view that Plaintiff was unable to stand and walk.  For these reasons, the Court finds that the ALJ did not err in discounting Dr. Khurana's opinion.[1]

    Moving now to Dr. Doan, the Court finds that the ALJ's rejection of his opinion is also supported by the record.  The ALJ rejected Dr. Doan's opinion because it was not supported by his treatment notes or any objective tests and because it was inconsistent with the record as a whole.  (AR 18.)  The ALJ noted, for example, that most of Plaintiff's visits to Dr. Doan were for run-of-the-mill maladies, like colds and flu, not muscle or skeletal complaints.  (AR 18.)  The record supports this view.

    Dr. Doan's treatment notes are 13 pages long, covering a 21-month period (January 2007 to September 2008), documenting two visits per page, i.e., 26 in all.  (AR 198-210.)  Each time Plaintiff visited Dr.

---

[1] The Court notes that even Plaintiff has questions about Dr. Khurana's opinion.  (AR 67 ("[I]t is my firm belief that Dr. Krishan Khurana is only [] extending my treatment for financial gains instead of providing a clear distinction of my ailments.").)

5

Doan, Dr. Doan listed the purpose(s) for the visit. As the ALJ found, most of the visits were for routine complaints, like a sore throat, a runny nose, or a headache. Though Plaintiff sometimes also complained during these visits that she was experiencing body aches, and though some of her visits were triggered solely by body aches, the ALJ's finding that most of the visits were for something other than body aches is supported by the record. This contradicts Plaintiff's presentation, here. According to Plaintiff, she is so stricken with pain that she cannot walk without a walker and cannot sit for more than 30 minutes. (AR 30-31.) One would think that a patient suffering from this type of pain would not only include that pain in the list of reasons for seeking medical advice but would put it first on the list. Plaintiff's failure to do so undercuts Dr. Doan's opinion that she was totally disabled due to this pain.

The ALJ's finding that Dr. Doan's opinion is not supported by clinical and laboratory tests is also borne out by the record. There is little if any objective support in this record for Dr. Doan's opinion. Plaintiff points to x-rays she had taken and argues that they constitute objective evidence of her ailments. The Court does not interpret the x-rays the way Plaintiff does. The x-rays revealed "mild degenerative changes" or "degenerative changes" with "no evidence of acute trauma." (AR 216-20.) Thus, they seem to support the ALJ's view of the evidence, not Plaintiff's.

Plaintiff argues that, if the doctors' records did not support their opinions, the ALJ should have recontacted them and obtained the "missing" records. This argument is rejected. To begin with, Plaintiff, who was represented by counsel at the hearing and is represented by counsel now, had the burden of establishing disability.

That burden included the obligation to submit medical records to support her claims. Second, in the two-and-a-half years since the ALJ issued his decision, Plaintiff has not produced any "missing" medical records to bolster her case. This suggests to the Court that the records either do not exist or that they do exist but that they do not support Plaintiff's case. In either situation, remanding the case to the Agency to add the records would be futile.

In the end, the Court agrees with the ALJ that the treating doctors' opinions are not supported by the medical records. Though it is clear that Plaintiff suffers from pain as a result of certain musculoskeletal maladies, the doctors' opinions that Plaintiff is rendered, essentially, bed-ridden as a result is not supported by any of the evidence and seems to be merely an accommodation for Plaintiff. This is particularly true regarding Dr. Moore's opinion. For that reason, the ALJ's decision to reject the treating doctors' opinions and rely, instead, on the examining doctor's opinion is affirmed.

C.  The Residual Functional Capacity Finding

Plaintiff complains that the ALJ erred when he failed to include the limitations found by her treating doctors in formulating the residual functional capacity. But the ALJ rejected Plaintiff's treating doctors' opinions, including their limitations, and, therefore, was not required to include those limitations in the residual functional capacity finding. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record.")

Plaintiff also takes exception to the ALJ's failure to include a limitation for language because she does not speak English. Though it

is not entirely clear whether an ALJ is required to address a claimant's language limitations at step four, *see Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001), the Court will side with the Agency on this issue in the context of this case as it was Plaintiff's burden at step four to establish that she was unable to return to her past relevant work and she never argued that language was a barrier to her employment nor did she claim that she was disabled based on her inability to speak English. Further, the record shows that she was able to work between 2005 and 2008 as a cook in a retail store and in a school without any apparent difficulty in communicating. (AR 147, 152.) Finally, the vocational expert was present throughout the hearing, at which Plaintiff testified through a translator, and, thus, presumably she took Plaintiff's language ability into account when determining that she could perform her past relevant work. (AR 38.)

## IV. CONCLUSION

For the reasons set forth above, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: June 25, 2013.

*Patrick J. Walsh*
_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\HEREDIA, 4113\opinion and order.wpd